IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

PETER CHUN NAM YEUNG,

             Petitioner,

   v.

LINDA SANDERS,

             Respondent.

HON. JEROME B. SIMANDLE

Civil No. 11-5966 (JBS/JS)

**OPINION**

APPEARANCES:

Mr. Peter Chun Nam Yeung
F.C.I. Lompoc
3600 Guard Road
Lompoc, CA 93436-2705
    Petitioner Pro Se

Steven J. D'Aguanno, Assistant United States Attorney
Office of the U.S. Attorney
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101
    Attorney for the Respondent Linda Sanders

**SIMANDLE,** Chief Judge:

## I. INTRODUCTION

This matter comes before the Court on Petitioner Peter Chum Nam Yeung's motion to vacate, alter, or amend his sentence, filed pursuant to 28 U.S.C. § 2255. Petitioner argues that the Court did not make the necessary findings of fact in imposing his sentence; that his sentence violates the Eighth Amendment; that this Court improperly determined the relevant conduct attributable to his sentence; and that he is

actually innocent.  [Docket Items 1.]  The Court finds that the motion, files and records of the case conclusively show that Petitioner is not entitled to relief and therefore his § 2255 petition will be denied without a hearing.

## II.  BACKGROUND

Petitioner was convicted before the undersigned in the District of New Jersey of a conspiracy to smuggle cigarettes into the United States, traffic in goods bearing counterfeit marks, and traffic in contraband cigarettes in violation of 18 U.S.C. §§ 371, 545, 2320(a), and 2342(a)(Count 1); and (2) trafficking in goods bearing counterfeit marks, in violation of 18 U.S.C. § 2320(a)(Counts 2 and 4).  (App.[1] 40.)

This criminal case was brought after a five-year undercover investigation which led to the seizure of approximately $5.3 million in counterfeit U.S. currency, 117 million counterfeit cigarettes, 45,000 ecstasy pills, and 390 grams of crystal methamphetamine.  (Pre-Sentence Report ¶ 95.)

Petitioner was indicted on August 21, 2006, by a grand jury sitting in Newark, New Jersey.  (App. 3, 8-23.)  The August 21, 2006 indictment charged Yeung along with two other individuals, Wai Leung Chu and Zhi Qing Wu, with conspiracy to smuggle cigarettes into the United States (Count One) and

-----

[1] "App." refers to the government's Appendix which as been submitted along with the government's brief.

2

multiple trafficking counts (Counts Two - Five).  This five-count indictment severed Yeung, Chu and Wu from an earlier indictment that raised more charges against additional defendants.  Wu was permitted to enter into a pretrial diversion program, and he was therefore excused from trial. (App. 3-4.)

A jury trial, presided over by the undersigned, commenced on September 11, 2006 and closing arguments were heard on September 18, 2006.  (App. 4.)  On September 19, 2006, the jury returned its verdict.  (App. 5.)  Chu was charged in Counts One and Three and was convicted of both counts.  (App. 244-45.) Petitioner Yeung was charged in all five counts of the Indictment and was convicted on Counts One, Two and Four. Petitioner was acquitted on Counts Three and Five.  (App. 244-45.)

The District Court held a sentencing hearing for Petitioner Yeung on August 7, 2007.  At the beginning of the sentencing hearing, the Court asked counsel whether there were any objections to the presentence report.  Counsel for the government requested that certain portions of the report be deleted.  Counsel for Petitioner objected to the three-point enhancement under U.S.S.G. § 3B1.1(b).  (App. 253-54.) Specifically, Petitioner's counsel argued that Yeung was not a leader of the conspiracy and contended that the evidence at

trial was that Yeung was merely a gofer between top players in the scheme. (App. 258-59.) Consequently, counsel maintained that Petitioner was a minor player in this criminal scheme and asked for a reduction of the role enhancement. (App. 259-60.)

After hearing counsel's arguments, the Court concluded that the government did not meet its burden to establish a three-point enhancement under Section 3B1.1(b) because the government was unable to articulate more than five participants. However, the Court concluded that the government had established a factual basis for a two-point enhancement under Section 3B1.1(c). This provision states, "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." U.S.S.G. § 3B1.1. In reaching this conclusion, the Court reasoned:

> What we have from the proofs at trial which, of course, I had the benefit of presiding over as well as the information in the Presentence Investigation, is that Mr. Yeung was indeed a leader or manager of the criminal activity for which he's been convicted. The Government has demonstrated that with respect to his dealing with Keith Tang. That Tang designated Mr. Yeung as his guy and delegated to Yeung the authority to make the arrangements for the Canadian delivery. Mr. Yeung himself, described himself as a partner with Keith Tang. I don't find that Yeung was on the same level as Tang. I find that Yeung was empowered with Tang's authority to make the happening for and carry out the arrangements for the delivery in Count Four. Mr. Yeung was clearly a supervisor of others with respect that the load which forms an important basis of his conviction. He supervised the individuals who were seen unloading in the videos. He had the authority to make plans and

4

> arrangements as well as when to receive the product.  So
> he was a participant at the planning stage and also at
> the execution and receiving stage.  The notion that he
> should receive a, either a neutral role, a minor role
> adjustment downward I've considered and reject it.  He
> had much more than a neutral role with regard to the
> offenses of conviction.  It also has to be borne in mind
> that Mr. Yeung is not being charged with criminal
> responsibility for the over-arching RICO conspiracy, the
> Racketeering Acts and all of the other things that did
> not survive into the indictment, in this case, 06-656.
> If I were stacking his conduct up against the overall
> unrest which is a much broader universe than perhaps his
> role could be described as a normal or neutral role.  But
> with respect to these offenses of conviction, which is a
> smaller universe, he played a more dominant role.
>
> Nonetheless, since I do not find that he has been shown
> to be subject to a three level enhancement, I am going to
> modify the pre-sentence report enhancement. . . . And so
> carrying through the math with regard to the other
> calculation, the total offense level becomes 32.  And at
> level 32 criminal history Category 2, the advisory
> guideline range becomes 135-158 months.

(App. 269-70.)  The Court then questioned Petitioner's counsel

about whether Petitioner had reviewed the Presentence report

and whether he had any changes to make.  Petitioner's counsel

affirmed that Mr. Yeung had reviewed the Presentence report and

did not have any changes.  (App. 270.)

The Court next heard argument from counsel on the

application of the Section 3553(a) factors.  Petitioner's

counsel urged the Court to consider time served by the

Petitioner and give a lesser sentence than the guidelines due

to Petitioner's limited role. (App. 270-273.)  The government

argued that a sentence within the guideline range was

appropriate.  (App. 274-73.)

After hearing all counsels' arguments, the Court sentenced
Petitioner to a 144-month term of imprisonment, which consisted
of a 60-month sentence on Count One, followed by sentences on
Counts Two and Four of 84 months each, to be run concurrent
with each other and consecutive to Count One.  (App. 281.)  The
Court found Petitioner could not pay a fine within the
Guideline range; however, the Court imposed a $3,000 fine to be
paid through Petitioner's participation in the Bureau of
Prisons Inmate Responsibility Program.  (Id.)  This term of
imprisonment fell within Yeung's advisory Sentencing Guidelines
range of 135 to 158 months.

On August 7, 2007, Yeung, through his counsel, appealed
his sentence.  (App. 45.)  On appeal, Petitioner argued that
the Court improperly denied his motion for acquittal made after
the close of the government's case-in-chief.  Petitioner also
challenged the two-point enhancement imposed under U.S.S.G. §
3B1.1(c).  Finally, Petitioner argued that the Court did not
adequately consider the factors in 18 U.S.C. § 3553(a) in
determining his sentence.  (App. 52-53.)  On March 29, 2010,
the Third Circuit issued an opinion rejecting Petitioner's
arguments, finding that this Court did not abuse its discretion
and affirming the sentence imposed.  (App. 53.)

On March 23, 2011, Yeung filed a writ of habeas corpus
pursuant to 28 U.S.C. § 2241, in the Central District of

California, where he was confined at the Federal Correctional Institution at Lompoc, California. In an order dated October 12, 2011, the Central District of California recharacterized Petitioner's motion as a § 2255 motion. That court reasoned that each of the Petitioner's claims amounts to an attack on the validity of either his conviction or sentence, but not the execution of his sentence. Therefore, the court held that the Petitioner's motion should have been brought under § 2255. Consequently, the Court advised the Petitioner of the potential adverse consequences of recharacterization and the Petitioner declined to elect either of the two following options: (1) consenting to the recharacterization; or (2) withdrawing his motion. Since the Petitioner was unresponsive, the Court subsequently recharacterized his petition and transferred the case from the Central District of California to the District of New Jersey, as the District of New Jersey was the sentencing court. [Docket Item 12.]

The Petitioner then filed a motion to challenge the recharacterization of his original 2241 motion and sought to transfer the matter back to the Central District of California. In a Memorandum Opinion dated March 27, 2012, this Court denied Petitioner's motion. [Docket Item 20.] The Court then ordered the government to answer Petitioner's § 2255 application. [Docket Item 22.] The government filed an answer [Docket Items

28-38] and Petitioner replied [Docket Item 39].

This matter is now fully briefed and ready for review.

**III.  DISCUSSION**

**A.  Standard of Review**

Under § 2255(a), a federal prisoner may move to vacate, set aside or correct a sentence on the ground that the sentence was imposed in violation of the Constitution or federal law, the sentencing court was without jurisdiction, or the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. The district court shall grant a hearing to determine the issues and make findings of fact and conclusions of law.  28 U.S.C. § 2255(b). However, if the motion, files and records of the case conclusively show that the prisoner is not entitled to relief, the petition will be denied. Id.; see also United States v. McCoy, 410 F.3d 124, 131-32 (3d Cir. 2005) (holding a district court must grant an evidentiary hearing unless the record before it conclusively showed the petitioner was not entitled to relief).

Generally, an evidentiary hearing must be held to resolve issues of fact falling outside the record of the case. United States v. Costanzo, 625 F.2d 465, 470 (3d Cir. 1980). However, a hearing need not be held if the petition raises no legally cognizable claim, or if the factual matters raised by the petition may be resolved through the district court's review of

the motions and the records in the case, or, in some circumstances, if the court, in its discretion, finds the movant's claims to be too vague, conclusory or palpably incredible. Id. (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)).

Furthermore, not every asserted error of law may be raised on a § 2255 motion. See Davis v. United States, 417 U.S. 333, 346 (1974). The appropriate inquiry is whether the claimed error is a "fundamental defect which inherently results in a complete miscarriage of justice" and whether it presents "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Id. (quoting Hill v. United States, 368 U.S. 424, 429 (1962)).

Here, the Petitioner argues that the Court did not make the necessary finds of fact in imposing his sentence; that his sentence violates the Eighth Amendment; that this Court improperly determined the relevant conduct attributable to his sentence; and that he is actually innocent. The Court will address each argument below.

**B.    Did the Court make the necessary finds of fact in imposing his sentence**

First, Petitioner maintains that the Court did not properly follow the procedure set forth in Fed. R. Crim. P. 32(i)(3)(B) when imposing his sentence. Petitioner argues that the Court did not make necessary findings of fact to justify

its sentence.

The Court finds this argument without merit. First of all, the Petitioner fails to specify what aspects of his sentence were not supported by a factual finding by the Court. The Court engaged in an extensive colloquy with counsel regarding the record established at trial and issued an oral opinion explaining Yeung's sentence which encompasses over six pages of transcript. (App. 275-82.)

Further, upon reviewing the transcript, it is clear that the Court complied with Fed. R. Civ. P. 32(i)(3)(B). This Rule provides that a court "must--for any disputed portion of the presentence report or other controverted matter--rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."

Here, at the beginning of the sentencing hearing, the Court asked both counsel whether there were any objections to the presentence report. The Court heard both counsels' objections and addressed each objection accordingly. With regard to Petitioner's counsel's objection, the Court heard extended argument on whether a leadership role enhancement under U.S.S.G. § 3B1.1(b) was warranted. The Court then determined that a factual basis had not been established for that enhancement, but that the government had met its burden of

proof for a two-point enhancement under Section 3B1.1(c).  The
Court then went through the factual basis for this enhancement
on the record and relied on evidence provided at trial.  (App.
267-69.)  The leadership role enhancement was the only aspect
of the presentence report that was challenged by Petitioner's
counsel and this objection was adequately addressed by the
Court in accordance with Rule 32, Fed. R. Crim. P.

Therefore, the Court finds this aspect of Petitioner's
motion to vacate, alter or amend his sentence without merit and
will deny this portion of his application.

### C. Does Petitioner's sentence violate the Eighth Amendment?

Next, Petitioner argues that the Sentencing Guidelines
were given superior consideration to the factors articulated in
18 U.S.C. § 3553(a).  Petitioner further argues that he was
denied a safety valve reduction, he was given an enhancement
for a leadership role and an enhancement for obstruction which
improperly raised his guideline range.  Consequently,
Petitioner argues that his sentence was grossly
disproportionate to the offense committed.

"The Eighth Amendment, which forbids cruel and unusual
punishments, contains a narrow proportionality principle that
applies to noncapital sentences." Ewing v. California, 538 U.S.
11, 20 (2003) (citations omitted).  The Supreme Court has
identified three factors that may be relevant to a

11

determination of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment: "(1) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem v. Helm, 463 U.S. 277, 292 (1983). Importantly, "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime," Harmelin v. Michigan, 501 U.S. 957, 1001 (1991). See also United States v. MacEwan, 445 F.3d 237, 247 (3d Cir. 2006)(applying standards set forth in Solem, Ewing and Harmelin).

As an initial matter, the Court notes that Petitioner did not receive an enhancement of his sentence based on obstruction. (PSR ¶ 305.) In addition, a safety valve reduction under U.S.S.G. § 5C1.2 is inapplicable in this case because Yeung was not convicted of any of the predicate offenses set forth in § 5C1.2(a) and Yeung's criminal history precluded the application of this provision in any event. Therefore, this aspect of Yeung's habeas petition lacks any relevance and will be denied.

To the extent Petitioner argues his sentence was improperly enhanced under U.S.S.G. § 3B1.1(c), this argument is

without merit.  This issue was extensively argued during Yeung's sentencing and the Court's role enhancement was affirmed by the Third Circuit on appeal.  Given that the Court properly found Petitioner played a leadership role in the convicted conspiracy to smuggle cigarettes, Petitioner was not eligible for a minor role adjustment pursuant to § 3B1.2(b). Consequently, Petitioner's arguments are unpersuasive.

Finally, disregarding Petitioner's arguments, Petitioner's sentence is not grossly disproportionate under the Eighth Amendment.  Petitioner has failed "to show a gross imbalance between the crime and the sentence" and therefore has failed to sustain his burden on this habeas petition.  MacEwan, 445 F.3d at 248.  Petitioner's sentence was will within the statutory maximum for the convicted offenses and was within the recommended guideline range.  While other members of this particular conspiracy received lesser sentences, this was generally due to their lesser roles, their acceptance of responsibility when they pleaded guilty, and especially for those who cooperated with the government in the investigation and prosecution of others.  (App. 279.)  Here, Mr. Yeung did not accept responsibility or convey any remorse for his actions, even after he was found guilty by a jury.  (App. 281.)

Therefore, this aspect of Petitioner's habeas petition will be denied.

**D.    Did the Court properly determine the relevant conduct attributable to his sentence**

Third, Petitioner argues that the Court considered conduct outside what was proven at trial to calculate his sentence. The Petitioner argues that the Court improperly applied U.S.S.G. § 1B1.3(a)(1)(A)&(B), which provides:

> Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
> (1)(A)  all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

Petitioner argues that the Court considered conduct outside the acts which were taken in furtherance of the conspiracy in imposing his sentence.  Petitioner argues that this violates 18 U.S.C. § 3553(a).

This argument is unsupported by the record and wholly without merit.  First, Petitioner fails to state in his petition what conduct the Court considered which was not part of the convicted offenses.  In reviewing the record, the Court

14

finds that it only considered conduct by the Petitioner which was presented to the jury and used as a basis for his conviction. While the Court could have used evidence which was presented on Counts Three and Five to impose a harsher sentence, if the Court found it was supported by a preponderance of reliable evidence for sentencing purposes, the Court did not. Instead, the Court declined to consider any evidence that was used exclusively to establish Counts Three and Five because Petitioner was acquitted of those counts by the jury, even though the Court could have considered this conduct in imposing Yeung's sentence. See United States v. Jimenez, 513 F.3d 62, 88 (3d Cir. 2008)("the district court was free to consider relevant conduct, including conduct resulting in acquittal, that was proved by a preponderance of the evidence in determining [Defendant's] sentence within the original statutory sentencing range").

The Court finds that the record conclusively shows that the conduct used by the Court to set Petitioner's sentence was related to his role in the charged conspiracy. This conduct was the basis for Yeung's convictions on Counts One, Two and Four. Therefore, Petitioner's argument that the Court violated 18 U.S.C. § 3553(a) in considering relevant conduct is without merit. To the extent Petitioner seeks relief based on this argument, his habeas application is denied.

### E. Actual Innocence Claim

Finally, Petitioner argues he is actually innocent of Counts One, Two and Four. Petitioner, however, fails to set forth any basis for this claim and does not point to any reliable evidence not presented at trial to support it. Petitioner instead argues that the evidence at trial was insufficient to convict him.

The Court finds the Petitioner's claim of actual innocence is without merit. A claim of "actual innocence" relates to innocence in fact, not innocence based on a legal, procedural defect. A litigant must present evidence of innocence so compelling that it undermines the court's confidence in the trial's outcome of conviction; thus, permitting him to argue the merits of his claim. A claim of actual innocence requires a petitioner to show: (a) new reliable evidence not available for presentation at the time of the challenged trial; and (b) that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence. See House v. Bell, 547 U.S. 518 (2006); Schlup v. Delo, 513 U.S. 298, 324 (1995). Furthermore, the Supreme Court, in House, emphasized that the gateway standard for habeas review in claims asserting actual innocence is extremely demanding and permits review only in the "extraordinary" case. See House, 547 U.S. at 536-37 (citing Schlup, 513 U.S. at 327).

The government presented sufficient evidence at trial that Petitioner was a leader in a conspiracy to smuggle cigarettes into the United States, traffic in goods bearing counterfeit marks, and traffic in contraband cigarettes in violation of 18 U.S.C. §§ 371, 545, 2320(a), and 2342(a); and the government presented compelling evidence that the Petitioner trafficked goods bearing counterfeit marks, in violation of 18 U.S.C. § 2320(a). The Third Circuit affirmed that sufficient evidence was presented to sustain the government's burden of proof on the charged counts. Petitioner has presented no new reliable evidence to the contrary.

Therefore, Petitioner's claim of actual innocence will be denied.

**F. Petitioner's Reply**

In his reply, Petitioner raises new arguments for the first time and contends that his habeas application should be granted because his counsel was ineffective in failing to move to dismiss the indictment on the basis of entrapment. Petitioner also argues that his counsel was ineffective on appeal.

The Court will dismiss these claims and construe them as a second successive habeas petition. When Petitioner's application was converted from a Section 2241 petition to a Section 2255 petitioner, a <u>Miller</u> Order was sent to the

17

Petitioner which stated:

> [T}his is to advise you that under federal law, a person seeking relief in federal court from confinement resulting from conviction in that court must include in a single petition, under § 2255, all potential claims for which he or she desires to seek review and relief, because a second or successive habeas petition under § 2255 must be dismissed unless certain very specific and rare circumstances exist, <u>see</u> 28 U.S.C. § 2244.

[Docket Item 15.]  Petitioner did not write to the Court and advise the Court that he wished to add claims for ineffective assistance of counsel.  Instead, Petitioner continued to challenge the characterization of his motion as a § 2255 petition rather than a § 2241 petition.  Petitioner did not raise these ineffective assistance of counsel claims until he filed his reply brief, at which point the government was afforded no opportunity to respond.  In addition, Petitioner's reply was filed on January 28, 2013, almost two years after the Third Circuit denied his appeal and his conviction became final.

Accordingly, the Court will construe the portion of Plaintiff's reply raising these new ineffective assistance of counsel claims as a second, successive habeas petition.  28 U.S.C. § 2255(h) provides:

> (h) A second or successive motion must be certified as provided in section 2244 [28 USCS § 2244] by a panel of the appropriate court of appeals to contain--
>     (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant

18

guilty of the offense; or
       (2) a new rule of constitutional law, made retroactive
    to cases on collateral review by the Supreme Court, that
    was previously unavailable.

Petitioner has not certified his second application pursuant to

Section 2244, Petitioner has presented no newly discovered

evidence and Petitioner has cited no new rule of constitutional

law which would provide a basis for bringing these new claims.

Petitioner should have raised these claims for ineffective

assistance of counsel in his initial § 2255 petition.  By

failing to do so, Petitioner is foreclosed from raising them at

this late juncture.

     However, even considering the merits of Petitioner's

argument, the Petitioner has not established that his counsel

was ineffective.  To prevail on a claim of ineffective

assistance of counsel, Petitioner must demonstrate that (1)

counsel's performance was so deficient as to deprive him of the

representation guaranteed to him under the Sixth Amendment of

the United States Constitution, and (2) the deficient

performance prejudiced the defense by depriving the defendant

of a fair trial. Strickland v. Washington, 466 U.S. 668, 687

(1984). To show prejudice under Strickland, Petitioner must

demonstrate that there is a "reasonable probability that but

for counsel's unprofessional errors, the result of the

proceeding would have been different." Gov't of the V.I. v.

Forte, 865 F.2d 59, 62 (3d Cir. 1989) (quoting Strickland, 466

U.S. at 694).

An entrapment defense requires the showing of two necessary elements: (1) the government induced the crime; and (2) a lack of predisposition on the part of the defendant to engage in criminal conduct. United States v. John, 477 Fed. App. 12, 15 (3d Cir. 2012)(citing United States v. Wright, 921 F.3d 42, 44 (3d Cir. 1990)).

Neither the charges presented in the indictment nor the evidence presented at trial would support an entrapment defense. Therefore, Petitioner's counsel was not deficient in failing to move to dismiss the indictment based on entrapment since such a motion would have been without legal merit.

In addition, Petitioner's counsel effectively argued Petitioner's claims on appeal. There is no evidence that Petitioner's counsel failed to bring claims on appeal or failed to present cogent arguments to the Third Circuit. While Petitioner's appeal was unsuccessful, that does not mean Petitioner's counsel was ineffective. Petitioner was convicted after a fair trial and he received a sentence that was both procedurally and substantively fair. Petitioner has failed to present evidence that his counsel was deficient or that he suffered prejudice from his counsel's representation. There is no evidence in the record that Petitioner's counsel was unprofessional or committed error at any stage of this

litigation.

Therefore, this aspect of Petitioner's reply is without merit and cannot be a basis for habeas relief.

## IV.  CONCLUSION

For the reasons discussed above, Petitioner's motion to vacate, alter or amend his sentence pursuant to 28 U.S.C. § 2255 will be denied.  The record conclusively shows that the Petitioner is not entitled to relief and therefore no evidentiary hearing is necessary.  Accordingly, Petitioner's application for relief will be denied and the Clerk shall close this case upon the docket.  The accompanying Order will be entered.

## V.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(B), "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy that standard, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v.</u>

Cockrell, 537 U.S. 322, 327 (2003).

Here, jurists of reason could not disagree with the Court's resolution of Petitioner's constitutional claims. Under the standard recited above, the Court will deny a certificate of appealability.

The accompanying Order will be entered.


**August 5, 2013**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge